IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 18, 2007

Charles R. Fulbruge III
Clerk

No. 06-20346

MELISSA AMSCHWAND, INDIVIDUALLY AND ON BEHALF OF THE
ESTATE OF THOMAS AMSCHWAND

Plaintiff-Appellant

v.

SPHERION CORP; ET AL

Defendants

SPHERION CORP, INDIVIDUALLY AND AS PLAN ADMINISTRATOR OF
THE GROUP PLAN LIFE POLICIES 779407-10-001 & 779407-11-001;
GROUP PLAN LIFE POLICIES, 779407-10-001 & 779407-11-001;
TRUSTEES OF THE INTERIM HEALTH BENEFITS TRUST GROUP LIFE
PLAN; GROUP LIFE AND ACCIDENTAL DEATH AND
DISMEMBERMENT INSURANCE PLAN

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas, Houston

Before JONES, Chief Judge, and BENAVIDES and STEWART, Circuit Judges.
EDITH H. JONES, Chief Judge:

This appeal addresses whether, under ERISA § 502(a)(3), 29 U.S.C.
§ 1132(a)(3), "other appropriate equitable relief" permits recovery of extra-contractual, or "make-whole," damages in the form of payment of life insurance
benefits that would have accrued to a plan beneficiary but for a plan fiduciary's

breach of fiduciary duty. Constrained by the Supreme Court's decision in Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 122 S. Ct. 708 (2002), we must deny relief.

## I. BACKGROUND

During Mr. Amschwand's medical leave for a bout with cancer that he did not survive, his employer Spherion switched insurance companies, replacing Prudential with Aetna Life Insurance Company ("Aetna") as the new provider of basic and supplemental life insurance benefits under the company Plan. A "special provision" of Aetna's group insurance policy covering Spherion employees was entitled the "Active Work Rule" and provided:

> If the employee is ill or injured and away from work on the date any of his or her Employee Coverage (or any increase in such coverage) would become effective, the effective date of coverage (or increase) will be held up until the date he or she goes back to work for one full day.

This provision was expressly noted in the "Summary of Coverage" Aetna prepared for Spherion employees.[1] As part of the transition to the new policy, Aetna and Spherion agreed that the Active Work Rule requirement would be waived for employees like Mr. Amschwand, who were not currently working full-time due to a medical condition that antedated the switch from Prudential to Aetna. For reasons Spherion has failed to explain, however, Mr. Amschwand was not among those who received coverage despite being on disability leave when the Policy took effect on May 1, 2000. Unlike other similarly situated employees, Mr. Amschwand never received a waiver and, unbeknownst to him, he remained subject to the Active Work Rule.

---

[1] The Summary of Coverage provision stated: "Active Work Rule: If you happen to be ill or injured and away from work on the date your coverage would take effect, the coverage will not take effect until you return to full-time work for one full day. This rule also applies to an increase in your coverage."

Spherion, an ERISA fiduciary and plan administrator, notified its employees that they could elect to participate in the Aetna Plan during an "open enrollment" period, which commenced in March 2000. Mr. Amschwand duly enrolled and was informed by Spherion that he could maintain his existing $248,000 basic coverage and his $142,000 level of supplemental coverage under the Policy. On November 6, 2000, a representative of Spherion's Human Resources Department orally confirmed to Mr. Amschwand that all of his life insurance was convertible under the Policy and that he remained eligible for all benefits.

As his condition deteriorated, Mr. Amschwand repeatedly contacted Spherion to confirm that he was fully covered under the Aetna Policy. Each time, Spherion representatives failed to mention the Active Work Rule requirement and incorrectly assured him that the full spectrum of coverage he enjoyed under the pre-Aetna Plan remained valid. Moreover, in spite of the Amschwands' repeated oral requests for documentation of the Policy terms and the corresponding Summary of Coverage, Spherion either maintained that informational booklets were not yet available for employees, or simply failed to provide any paperwork describing the conditions of the Policy. Believing himself covered, Mr. Amschwand timely paid the basic and supplemental life insurance premiums while on disability leave until his death in February, 2001. Mr. Amschwand diligently sought to ensure that his wife would be provided for under the Plan. Both parties agree, however, that Spherion never informed him that in order for the Policy to take effect he was required to return to work for at least one full day.

Shortly after her husband's death, Mrs. Amschwand filed a claim with Aetna only to be informed that because her husband had not satisfied the Active Work Rule, he was ineligible for benefits under the Policy. After being denied recovery in Aetna's administrative appeals process, Mrs. Amschwand filed suit

seeking relief under ERISA § 502(a)(3) in the form of "monetary losses caused by [the Spherion Defendants'] breach of fiduciary duty."[2]  That is, Amschwand sought the equivalent of the combined life insurance benefits that she would have received if her husband had complied with the Active Work Rule.  Spherion refunded the premium payments but maintained that the additional demand for money damages did not constitute "appropriate equitable relief" within the meaning of subsection (a)(3).  The district court agreed, granting summary judgment for Spherion.  The court also dismissed as moot a third-party complaint filed by Aetna.  Amschwand appeals.

## II.  STANDARD OF REVIEW

This court reviews the district court's summary-judgment grant de novo, applying the same standard used below.  Chacko v. Sabre, Inc., 473 F.3d 604, 609 (5th Cir. 2006).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

## III.  DISCUSSION

Section 502(a)(3) allows a plan participant, beneficiary, or fiduciary to obtain, inter alia, "appropriate equitable relief" to enforce the terms or to remedy violations of an employee-benefit plan.  The scope and nature of relief available to aggrieved parties under this statutory provision has been circumscribed by a line of Supreme Court decisions beginning with Mertens v. Hewitt Associates, 508 U.S. 248, 113 S. Ct. 2063 (1993).  Analyzing the remedies that were

---

[2] Amschwand already has recovered statutory damages in the amount of $100 per day from the date of Spherion's failure to timely provide policy documentation, as well as attorney's fees, pursuant to ERISA §§ 502(c)(1)(B) and (g)(1), 29 U.S.C. §§ 1132(c)(1)(B), (g)(1), respectively.  The present appeal concerns only the availability of a monetary remedy under § 502(a)(3).

historically available in courts of equity, the Court in Mertens held that § 502(a)(3) did not authorize a suit for monetary damages against a nonfiduciary that participated in the plan fiduciary's breach of duty. Despite the fact that monetary damages were among the remedies historically granted by pre-fusion equity courts in actions brought by a beneficiary against a trustee, the Court reasoned that consequential damages were a legal rather than equitable remedy and denied relief. Id. at 255-56, 113 S. Ct. at 2068-69. Justice Scalia supported this conclusion by acknowledging that in trust disputes a court sitting in equity could routinely establish "purely legal rights and grant legal remedies" otherwise beyond its equitable jurisdiction. Id. at 256, 113 S. Ct. at 2068; see also GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, THE LAW OF TRUSTS AND TRUSTEES, § 870 (rev. 2d ed. 1995). Congress's use of the term "equitable" in subsection (a)(3), therefore, was construed to encompass only categories of relief "<u>typically</u> available in equity," like injunction, mandamus, or restitution. Id. at 256, 113 S. Ct. at 2069. Had Congress intended subsection (a)(3) to authorize the panoply of legal remedies sometimes awarded by equity courts, the term "equitable" would become superfluous. Id. at 257-58, 113 S. Ct. at 2069-70; see also LaRue v. DeWolff, Boberg & Assocs., Inc., 450 F.3d 570, 574 (4th Cir. 2006), cert. granted, ____ U.S. ____, 127 S. Ct. 2971 (2007). ("[E]quitable relief connotes only a subset of the full palliative spectrum.") (citation and internal quotation marks omitted). Money damages, Mertens concluded, were the "classic form of legal relief" and thus not a "typically equitable" remedy available under § 502(a)(3). 508 U.S. at 255, 113 S. Ct. at 2068.[3]

---

[3] This court has held similarly. See Rogers v. Hartford Life & Accident Ins. Co., 167 F.3d 933, 944 (5th Cir. 1999) (noting that § 502(a)(3) excludes "extra-contractual," "make-whole," and "compensatory" damages); Weir v. Federal Asset Disposition Ass'n, 123 F.3d 281, 290 (5th Cir. 1997) (no compensatory or punitive damages available under § 502(a)(3) against a fiduciary in her individual capacity).

The spectrum of § 502(a)(3) relief contracted further in Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 122 S. Ct. 708 (2002). Great-West, a nonfiduciary insurance company, sought an injunction for money damages as restitution against a plan beneficiary, who had violated the plan's subrogation clause by failing to reimburse Great-West for his tort recovery in a lawsuit. Although restitution was mentioned in Mertens as "typically equitable," relief, Justice Scalia clarified in Great-West that "not all relief falling under the rubric of restitution is available in equity." 534 U.S. at 212, 122 S. Ct. at 714. The crucial distinction between two historical species of restitution is that equitable restitution seeks only to restore to the plaintiff particular funds or property in the defendant's possession, while legal restitution imposed personal liability for breach of a legal duty. Great-West ultimately reaffirms the Mertens requirement that the nature of the relief sought under § 502(a)(3) be "typically equitable"; it adds a second requirement that the cause of action giving rise to the claim be generically equitable as well. Great-West's desired relief was not "equitable" within this interpretation of § 502(a)(3) because under California law a constructive trust or equitable lien cannot be established over funds or property not within a defendant's control.

The freshest of Mertens's progeny, Sereboff v. Mid Atlantic Medical Services, Inc., ____ U.S. ____, 126 S. Ct. 1869 (2006), reinforces the two-part equity test. In Sereboff, an injured beneficiary who recovered a tort settlement was sued by the plan fiduciary to recoup medical expenses it had paid on the beneficiary's behalf. But in contrast to Great-West, the Sereboff beneficiaries retained possession and control of the particular settlement funds that the fiduciary sought. Accordingly, the Supreme Court held that the relief sought by the fiduciary would have been recognized as equitable by a pre-fusion equity court and was subject to the restitutionary remedy of an equitable lien on the

settlement funds. See Sereboff, ____ U.S. ____, 126 S. Ct. at 1874-75. Sereboff seems to confirm that the sine qua non of restitutionary recovery available under § 502(a)(3) is a defendant's possession of the disputed res. See, e.g., Coan v. Kaufman, 457 F.3d 250, 264 (2d Cir. 2006) (restitutionary relief is deprived of its equitable character for purposes of § 502(a)(3) "when, as here, the defendants never possessed the funds in question and thus were not unjustly enriched") (citation and internal quotation marks omitted); Knieriem v. Group Health Plan, Inc., 434 F.3d 1058, 1063 (8th Cir. 2006); Callery v. United States Life Ins. Co., 392 F.3d 401, 406 (10th Cir. 2004); Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1011 (9th Cir. 1998).

This appeal, in contrast to the Supreme Court cases, is a suit by a beneficiary seeking relief under § 502(a)(3) from a plan fiduciary for breach of fiduciary duty.[4] Amschwand places great weight on the distinguishing fact that Spherion's fiduciary status is "critical because, in courts of equity, make-whole relief was routinely available as a remedy for breach of fiduciary duty in cases brought against fiduciaries." Echoing the methodology of Justice Ginsburg's dissenting opinion in Great-West (a rationale resurrected in her concurrence in Aetna Health Inc. v. Davila, 542 U.S. 200, 124 S. Ct. 2488 (2004)), Amschwand argues that the district court misconstrued Mertens and Great-West, which narrowly held that extracontractual damages against nonfiduciaries are not equitable relief cognizable under § 502(a)(3). Against a fiduciary like Spherion,

---

[4] As the pleadings demonstrate, this action can alternatively be characterized as a demand for damages from the breach of Thomas Amschwand's life insurance policy. Contrary to Spherion's insistence, breach of contract, although historically not an action brought in equity, does not put equitable recovery under § 502(a)(3) out of Amschwand's reach. See Sereboff, ____ U.S. ____, 126 S. Ct. at 1874 ("ERISA provides for equitable remedies to enforce plan terms, so the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable; that would make § 502(a)(3)(B)(ii) an empty promise.").

however, money damages are available under § 502(a)(3) because such a claim would have entitled her to equitable restitution in the pre-fusion equity courts.

Anschwand's proposed distinction among defendants has been rejected by many of our sister circuits. There is no textual argument for drawing this distinction under § 502(a)(3). Under Great-West, only the nature of the claim and the relief sought – not the status of the litigants – determine the scope of available § 502(a)(3) recovery.[5] See, e.g., Callery, 392 F.3d at 409; McLeod v. Or. Lithoprint Inc., 102 F.3d 376, 378 (9th Cir. 1996) ("the status of the defendant, whether fiduciary or nonfiduciary, does not affect the question whether damages constitute 'appropriate equitable relief'" under § 502(a)(3)). That wider relief was traditionally available in equity courts against fiduciaries than nonfiduciaries is irrelevant to ERISA's remedial scheme. Mertens and its progeny state that § 502(a)(3) relief is affirmatively <u>not</u> grounded in "the special equity-court powers available to trusts." Great-West, 534 U.S. at 219, 122 S. Ct. at 718; Mertens, 508 U.S. at 258, 113 S. Ct. at 2070; see also Crosby v. Bowater Inc. Ret. Plan for Salaried Employees of Great N. Paper Inc., 382 F.3d 587, 596 (6th Cir. 2004).

Amschwand further repeats the unsuccessful argument that because monetary damages for breach of fiduciary duty were sometimes awarded against trustees in courts of equity, they are automatically available under § 502(a)(3). See, e.g., Davila, 542 U.S. at 223-24, 124 S. Ct. at 2504 (Ginsburg, J., concurring) (arguing that ERISA imports general trust principles recognized by equity courts). Mertens, however, held that even if breach of fiduciary duty is a generically equitable claim, the remedy sought — here, restitution — must have

---

[5] On its face, § 502(a)(3) defines who may bring an action; it does not condition the scope of recovery on the identity of the defendant. This is not true of other ERISA remedial provisions. See, e.g., Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, 354 F.3d 348, 352 & 353 n.13 (5th Cir. 2003) (citing statutory sections).

been one typically awarded, not one that could have been awarded, by a court of equity. The species of restitutionary relief sought by Amschwand here does not qualify as a "typically equitable" remedy under Great-West. Spherion never maintained possession of Amschwand's insurance proceeds, yet possession is the key to awarding equitable restitution in the form of a constructive trust or equitable lien. In contrast, Amschwand seeks relief – whether characterized as make-whole or restitutionary – that is legal in nature because it represents damages on the insurance contract that Spherion allegedly breached.[6] See LaRue, 450 F.3d at 575 ("absence of unjust possession is fatal to an equitable restitution claim"); Bauhaus USA, Inc. v. Copeland, 292 F.3d 439, 445 (5th Cir. 2002) (no § 502(a)(3) recovery because settlement proceeds were in the registry of the Mississippi chancery court, not under the defendant's control). Stated otherwise, even were we to find that Amschwand's cause of action sounds in equity, her desired relief is not typically equitable.

A defendant's possession of the disputed res is central to the notion of a restitutionary remedy, which was conceived not to assuage a plaintiff's loss, but to eliminate a defendant's gain. See, e.g., Great-West, 534 U.S. at 229, 122 S. Ct. at 723 (Ginsburg, J., dissenting); Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wainsbrough, 354 F.3d 348, 355-56 (5th Cir. 2003). The Courts of Appeals have widely adopted this reasoning. See, e.g., LaRue, 450 F.3d at 576 (value of a plaintiff's loss is a "measure that is traditionally legal, not equitable"); Coan, 457 F.3d at 264 (restitutionary remedies are based upon a defendant's gain); Callery, 392 F.3d at 406 (same);

---

[6] Cf. Langbecker v. Elec. Data Sys. Corp., 476 F.3d 299, 309 n.20 (5th Cir. 2007) (legal restitution is not a remedy cognizable under § 502(a)(3)); Coan, 457 F.3d at 264 (attempted recovery of funds allegedly dissipated by fiduciary's mismanagement of a 401(k) plan not actionable under § 502(a)(3)); Callery, 392 F.3d at 406 (attempted recovery of life insurance benefits by plan beneficiary who alleged breach of fiduciary duty not cognizable under § 502(a)(3)).

Bast, 150 F.3d at 1011 (defendant's "ill-gotten profit" is integral to equitable restitutionary remedies). Thus, if Spherion breached its fiduciary duty to Mr. Amschwand, the appropriate equitable remedy is the disgorgement of Spherion's ill-gotten profits, i.e., refund of the policy premiums. See Lind v. Aetna Health, Inc., 466 F.3d 1195, 1200-01 (10th Cir. 2006) (citing Callery, 392 F.3d at 406); Helfrich v. PNC Bank, Ky., Inc., 267 F.3d 477, 481 (6th Cir. 2001); Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 944-45 (8th Cir. 1999).

Obtaining the lost policy proceeds, as Amschwand requests, is simply a form of make-whole damages.[7] Cf. Coan, 457 F.3d at 264; Callery, 392 F.3d at 406. This demand is not equitable in derivation, but is akin to the legal remedies of extracontractual or compensatory damages. See GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 870 (rev. 2d ed. 1995) (payment of a sum due under the trust or damages for a trustee's wrongful act are legal remedies occasionally granted by an equity court); RESTATEMENT (SECOND) OF TRUSTS § 198(1) (1959) (enforcement of trustee's duty to pay money was an action at law).[8] In contrast to the make-whole damages sought here, equitable restitution was designed to restore the trust res damaged by a trustee's breach of duty; it did not aim to compensate a

---

[7] Amschwand's alternative characterization of the remedy she seeks under § 502(a)(3) as injunctive relief that would preclude Spherion's withholding payment of the make-whole damages is essentially indistinguishable from a demand for payment. Such attempts to recharacterize a desired § 502(a)(3) remedy as a purely equitable form of relief, like an injunction, have been consistently rejected. See Great-West, 534 U.S. at 210-11, 122 S. Ct. at 713; Mertens, 508 U.S. at 255; 113 S. Ct. at 2068; Bowen v. Massachusetts, 487 U.S. 879, 915-16, 108 S. Ct. 2722, 2743 (1988) (Scalia, J., dissenting); Eichorn v. AT&T Corp., 484 F.3d 644, 655 (3d Cir. 2007); Callery, 392 F.3d at 405.

[8] This court has explicitly rejected language from our pre-Mertens decisions which speculates that such relief could be available under § 502(a)(3). See, e.g., Rogers, 167 F.3d at 944, recognizing abrogation of Corcoran v. United Healthcare, Inc., 965 F.2d 1321 (5th Cir. 1992) ("Although our decision in Corcoran may have 'left the door open' to the possibility of recovering certain extra-contractual damages necessary to make a plaintiff whole, the Supreme Court firmly closed this door in Mertens.").

beneficiary for expected gains that would have accrued absent a fiduciary's breach. See RESTATEMENT (SECOND) OF TRUSTS § 205 (1959). Because the remedy sought here was not typically available in pre-fusion courts of equity, we are obliged to follow the Supreme Court's decision in Great-West and deny § 502(a)(3) relief.

## IV. CONCLUSION

For the aforementioned reasons, the judgment of the district court is AFFIRMED.

BENAVIDES, Circuit Judge, specially concurring:

The facts as detailed in Chief Judge Jones's opinion scream out for a remedy beyond the simple return of premiums. Regrettably, under existing law it is not available. I am constrained to join the court's opinion, which I find correctly applies controlling precedent.