**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DEBBIE McCRAVY,

*Plaintiff-Appellant,*

v.

METROPOLITAN LIFE INSURANCE
COMPANY,

*Defendant-Appellee.*

───────────────────

SECRETARY OF THE UNITED STATES
DEPARTMENT OF LABOR,

*Amicus Supporting Appellant.*

No. 10-1074

DEBBIE McCRAVY,

*Plaintiff-Appellee,*

v.

METROPOLITAN LIFE INSURANCE
COMPANY,

*Defendant-Appellant.*

───────────────────

SECRETARY OF THE UNITED STATES
DEPARTMENT OF LABOR,

*Amicus Supporting Appellee.*

No. 10-1131

Appeals from the United States District Court
for the District of South Carolina, at Charleston.
Patrick Michael Duffy, Senior District Judge.
(2:08-cv-01933-PMD)

Argued: January 27, 2011

Decided: May 16, 2011

Before TRAXLER, Chief Judge, and KING and WYNN,
Circuit Judges.

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Chief Judge Traxler and Judge King joined.

**COUNSEL**

**ARGUED:** Robert Edward Hoskins, FOSTER LAW FIRM, LLP, Greenville, South Carolina, for Debbie McCravy. Elizabeth Hopkins, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Secretary of the United States Department of Labor. Ian Seth Linker, METROPOLITAN LIFE INSURANCE COMPANY, New York, New York, for Metropolitan Life Insurance Company. **ON BRIEF:** Peter Stris, STRIS & MAHER, LLP, Dallas, Texas, for Debbie McCravy. J.D. Quattlebaum, HAYNSWORTH, SINKLER & BOYD, PA, Greenville, South Carolina, for Metropolitan Life Insurance Company. M. Patricia Smith, Solicitor of Labor, Timothy D. Hauser, Associate Solicitor, Plan Benefits Security Division, James L. Craig, Jr., Senior Regulations Attorney, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Secretary of the United States Department of Labor.

**OPINION**

WYNN, Circuit Judge:

Plaintiff Debbie McCravy sued Defendant Metropolitan Life Insurance Company ("MetLife"), alleging, among other things, breach of fiduciary duty, and seeking damages under the "other appropriate equitable relief" provision of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3). The district court granted McCravy summary judgment, but limited her damages to the return of her premiums. Both parties appealed. We now affirm.

I.

McCravy works for Bank of America. As a full-time employee, she participated in Bank of America's life insurance and accidental death and dismemberment ("AD&D") plan, which was issued and administered by MetLife. The plan provided that an insured could purchase accidental death and dismemberment coverage for "eligible dependent children." Under the plan, McCravy elected to obtain such insurance coverage for her daughter Leslie McCravy and paid premiums, which were accepted and retained by MetLife.

In 2007, while named as a covered dependent on McCravy's insurance plan, Leslie was murdered at the age of 25. McCravy, who was the beneficiary of the policy insuring her daughter, filed a claim for benefits. MetLife denied McCravy's claim on the grounds that Leslie did not qualify for coverage under the plan's "eligible dependent children" provision.

The plan defines "eligible dependent children" as children of the insured who are unmarried, dependent upon the insured for financial support, and either (a) under the age of 19 or (b) under the age of 24 if enrolled full-time in school. According to MetLife, because Leslie was 25 at the time of her death,

she no longer fit the definition of "eligible dependent children." As a result, MetLife denied McCravy's claim and attempted to refund the premiums retained to provide coverage for Leslie. McCravy, however, refused to accept the refund check.

Instead, McCravy filed suit in federal court in May 2008, alleging that MetLife's actions constituted a breach of fiduciary duty under ERISA, 29 U.S.C. § 1104, and seeking recovery under 29 U.S.C. § 1132(a)(2) or (a)(3). McCravy also alleged various claims under state law, including negligence, promissory estoppel, and breach of contract. In September 2008, MetLife filed a "Memorandum in Support of Preemption." With the parties' agreement, the district court treated the filing as a motion to dismiss.

On June 12, 2009, the district court ruled that McCravy's state law claims were preempted by ERISA. Regarding McCravy's breach of fiduciary duty claim, the district court ruled that McCravy could not recover under § 1132(a)(2). McCravy does not challenge the district court's ruling on the preemption of her state law claims or the disposition of her § 1132(a)(2) claim.

As for McCravy's claim under § 1132(a)(3), the district court ruled that, although McCravy was not entitled to recover full benefits under this provision, McCravy could recover the premiums withheld by MetLife for coverage that she never actually had on the life of her daughter. The district court therefore denied MetLife's motion to dismiss McCravy's § 1132(a)(3) claim and invited the parties to conduct further discovery.

On June 22, 2009, McCravy moved for summary judgment regarding the improperly withheld premiums, and reserved the right to appeal the district court's limitation of her recovery under § 1132(a)(3). On January 14, 2010, the district court entered a final order and judgment awarding McCravy the

improperly withheld premiums.[1] McCravy appealed, and MetLife cross-appealed.

## II.

McCravy first argues that 29 U.S.C. § 1132(a)(3) allows the remedy of surcharge, which would permit recovery of the life insurance proceeds lost by McCravy because of MetLife's breach of fiduciary duty. 29 U.S.C. § 1132(a)(3) provides that a civil action may be brought:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(a)(3). This case concerns the scope of the "equitable relief" provision.[2]

---

[1] The district court founded its decision on the parties' agreement that McCravy was entitled to a refund of the wrongfully withheld premiums. The district court did not explicitly address whether MetLife's actions constituted a breach of fiduciary duty under ERISA. Accordingly, we assume without deciding that MetLife breached its fiduciary duty under ERISA for the purpose of examining the scope of remedies available under 29 U.S.C. § 1132(a)(3).

[2] MetLife argues that 29 U.S.C. § 1132(a)(1) (allowing a plan participant to bring a civil action to recover benefits due under the terms of the plan) is McCravy's exclusive avenue of relief. *See Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 107 (4th Cir. 2006) (holding that a plaintiff may not seek recovery under § 1132(a)(3) when § 1132(a)(1) provides adequate relief). Insofar as McCravy does not have a claim for benefits under the plan, her claim is not precluded by *Korotynska*. *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (allowing action under § 1132(a)(3) when plaintiffs could not proceed under § 1132(a)(1) because they were no longer members of the plan).

Surcharge is defined as "[t]he amount that a court may charge a fiduciary that has breached its duty." Black's Law Dictionary 1579 (9th ed. 2009). McCravy alleges that surcharge encompasses the remedies provided by section 205 of the Restatement of Trusts, including charging a trustee with "(a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or (b) any profit made by him through the breach of trust; or (c) any profit which would have accrued to the trust estate if there had been no breach of trust." Restatement of Trusts § 205 (1935). McCravy portrays surcharge as having a distinctly restitutionary focus and functioning as a sanction.

In considering McCravy's claim for restitution, we are guided by the Supreme Court's opinion in *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993). The petitioners in *Mertens* (former employees of Kaiser Steel Corp.) sued the respondent (Kaiser's actuary), alleging breach of fiduciary and nonfiduciary duties. *Id.* at 251. The Supreme Court recognized that "[s]ince all relief available for breach of trust could be obtained from a court of equity, limiting the sort of relief obtainable under § [1132(a)(3)] to 'equitable relief' in the sense of 'whatever relief a common-law court of equity could provide in such a case' would limit the relief not at all." *Id.* at 257 (emphasis omitted). The Court held that the phrase "other equitable relief" refers only "to those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Id.* at 256 (emphasis omitted).

The Supreme Court refined the *Mertens* rule in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). There, the Court stated that whether restitution is legal or equitable depends on "the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Id.* at 213 (internal quotation marks and citation omitted). A plaintiff could seek restitution in equity, the Court explained, when "money or property identified as belonging in good con-

science to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* The Court therefore held that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214.[3] Applying these principles, the Court allowed a claim of equitable restitution to proceed in *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006), when "Mid Atlantic sought specifically identifiable funds that were within the possession and control of the Sereboffs." *Id.* at 362-63 (internal quotation marks omitted).

This circuit considered a similar issue in *LaRue v. DeWolff, Boberg & Associates, Inc.*, 450 F.3d 570 (4th Cir. 2006), *vacated*, 552 U.S. 248 (2008). The plaintiff in *LaRue* alleged that the defendants breached their fiduciary duties by failing to implement the investment strategy he selected for his employee retirement account. *Id.* at 571-72. Relying on 29 U.S.C. § 1132(a)(2) and (a)(3), the plaintiff sought recovery of the amount by which his account would have appreciated had defendants followed his instructions. *Id.* at 572. After holding that the plaintiff's claim under § 1132(a)(2) failed, we addressed the scope of "equitable relief" available under § 1132(a)(3). *Id.* at 574. We pointed out that the plaintiff did not allege that funds owed him were in the defendant's possession, but sought essentially to impose personal liability on the defendant to pay a sum of money. *Id.* at 576. In light of *Mertens* and its progeny, we concluded that this remedy was not available under § 1132(a)(3). *Id.*; *see also Rego v. Westvaco Corp.*, 319 F.3d 140, 145-46 (4th Cir. 2003) (rejecting plaintiff's attempt to recover difference in value of mishandled benefit plan when defendants possessed "no particular

---

[3]Significantly, the Supreme Court rejected an argument premised on the common law of trusts, explaining that *Mertens* "rejected the claim that the special equity-court powers applicable to trusts define the reach of § [1132(a)(3)]." *Great-West*, 534 U.S. at 219.

fund or property that can be clearly identified as belonging in good conscience to the plaintiff"). The Supreme Court vacated our decision in *LaRue* on the basis that the plaintiff had a remedy under § 1132(a)(2). *LaRue*, 552 U.S. at 256.

Here, McCravy contends that because the Supreme Court reversed *LaRue*, we are not bound by our decision regarding § 1132(a)(3) that rejected an argument similar to the one she now makes. *See EEOC v. City of Norfolk Police Dep't*, 45 F.3d 80, 83 n.4 (4th Cir. 1995) (precedential effect of vacated decision "is not at all clear."); *United States Dep't of Health & Human Servs. v. FLRA*, 983 F.2d 578, 581-82 (4th Cir. 1992) (adopting reasoning of vacated opinion where vacatur did not address the issue, but refusing to determine extent of precedential weight). We need not determine whether we are bound by our reasoning in *LaRue* because our consideration of the Supreme Court precedent upon which it relied leads us to the same conclusion.

Indeed, in *Great West*, the Supreme Court held that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 214. Here, McCravy seeks a monetary award in the amount of the life insurance benefits lost. As MetLife notes, however, McCravy is not the true owner of any funds in MetLife's possession. The kind of restitution that McCravy seeks, therefore, is not equitable, i.e. "the imposition of a constructive trust or equitable lien on particular property," but legal. *Id.* On the basis of *Great-West*, we hold that the district court did not err in limiting McCravy's damages to the premiums withheld by MetLife. To the extent that McCravy seeks to sanction MetLife, this remedy is also not allowed under ERISA. *See Powell v. Chesapeake & Potomac Tel. Co. of Va.*, 780 F.2d 419, 424 (4th Cir. 1985) ("[T]he provision for 'other appropriate equitable relief,' . . . cannot be held to authorize extracontractual or punitive damages for

the breach of a plan administrator's fiduciary duties under ERISA.").

Finally, we note that our resolution of this issue conforms with that of several other circuits. *See Pichoff v. QHG of Springdale, Inc.*, 556 F.3d 728, 732 (8th Cir. 2009) (holding that § 1132(a)(3) does not allow a plaintiff to recover benefits that would have been paid to his estate had his policy not lapsed), *cert. denied*, 130 S. Ct. 188 (2009); *Amschwand v. Spherion Corp.*, 505 F.3d 342, 343 (5th Cir. 2007) (stating that § 1132(a)(3) does not permit "damages in the form of payment of life insurance benefits that would have accrued to a plan beneficiary but for a plan fiduciary's breach of fiduciary duty"); *Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1063-64 (8th Cir. 2006) (rejecting argument that "surcharge" constitutes "appropriate equitable relief" under § 1132(a)(3) when defendant held no funds or property belonging to plaintiff to form the basis of a constructive trust); *Callery v. U.S. Life Ins. Co.*, 392 F.3d 401, 406 (10th Cir. 2004) (rejecting argument that full amount of policy is the appropriate award of restitution damages under § 1132(a)(3) and limiting relief to recovery of premiums paid).

## III.

McCravy next argues that this Court should "take this opportunity to adjust its precedent and recognize equitable estoppel as part of the common law of ERISA." Brief of Appellant at 28.

"Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417-418 (4th Cir. 2000) (internal quotation marks omitted). Other circuits recognize estoppel in the context of ERISA claims when a claimant relies to his detriment on some misrepresentation of coverage. *See, e.g., Kan-*

*napien v. Quaker Oats Co.*, 507 F.3d 629, 636 (7th Cir. 2007) (listing elements as "(1) a knowing misrepresentation; (2) made in writing; (3) reasonable reliance on that representation by [plaintiffs]; (4) to their detriment"); *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999) (listing elements as "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced"); *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994) (listing elements as "(1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances").

In this matter, the district court ruled that McCravy's attempt to rely on estoppel principles would conflict with this circuit's rule that ERISA does not provide for recovery when the employee alleges that some oral modification was made to the clear written terms of the plan. As we stated in *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54 (4th Cir. 1992), "[u]se of estoppel principles to effect a modification of a written employee benefit plan would conflict with ERISA's emphatic preference for written agreements." *Id.* at 58 (internal quotation marks omitted). Consequently, "[e]quitable estoppel principles, whether denominated as state or federal common law, have not been permitted to vary the written terms of a plan." *Id.* at 59; *see also Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 239 (4th Cir. 2008) ("[T]he district court was without authority to direct the plan administrator to administer the Plan contrary to its terms by injecting the prohibited concepts of waiver and estoppel."), *cert. denied*, 129 S. Ct. 2735 (2009); *White v. Provident Life & Acc. Ins. Co.*, 114 F.3d 26, 29 (4th Cir. 1997) (Plaintiff could not rely on "the federal common law under ERISA, which does not incorporate the principles of waiver and estoppel.").

McCravy recognizes that, under *Coleman*, she cannot bind MetLife to cover her daughter as an eligible dependent contrary to the terms of the plan. But she urges this Court to use

equitable estoppel to bind MetLife to pay the conversion coverage benefits because the plan allows a dependent the option to convert and continue coverage. Notwithstanding the fact that McCravy did not apply for conversion coverage, she maintains we should apply equitable estoppel because "whatever else remained to be done, if anything, McCravy would have done it." Brief of Appellant at 36.

The Summary Plan Description included in the record explains how an employee may convert coverage. It states that, "[d]ependent child life insurance generally may be converted to an individual policy (but cannot be continued under portable term group coverage). Conversion and continuation options are not available for AD&D or business travel accident insurance." Elsewhere the Summary Plan Description explains, "[i]f you wish to apply for the individual policy, you must contact your dependent life insurance carrier within 31 days following the termination of the group dependent life coverage."

Contrary to the Summary Plan Description, McCravy did not apply for any individual policy by contacting MetLife within 31 days. McCravy attributes this nonfeasance to MetLife's failure to make her aware that her dependent ceased to be eligible for coverage. Be that as it may, to estop MetLife from denying conversion coverage, we would have to treat the application requirement as waived. But to do so would allow a prohibited modification of the terms of the plan. *See Coleman*, 969 F.2d at 59 ("We can only regard such a result as a modification of the plan's termination provision and, therefore, as being in direct conflict with the statutory requirements.").

There is another reason why equitable estoppel is inappropriate here. Even where the doctrine is recognized, it requires reasonable reliance by the claimant on a representation of coverage. *See Curcio*, 33 F.3d at 237 (concluding that plaintiffs "suffered an injury in giving up an opportunity to accom-

modate their insurance needs through an independent insurance carrier because of their reasonable reliance on [the employer's] representations"). McCravy does not allege that MetLife represented to her that she was entitled to conversion coverage benefits. Instead she alleges that MetLife represented that her daughter was covered, not as one who had converted to an individual policy, but as an eligible dependent. But applying estoppel here would obligate MetLife to pay benefits on behalf of a dependent expressly excluded from coverage by the plan in violation of *Coleman*.

In the alternative, McCravy seeks a different sort of remedy, which she characterizes in her brief as equitable tolling or reinstatement to the status quo.[4] For the former, McCravy relies upon *Gayle v. United Parcel Service, Inc.*, 401 F.3d 222, 226 (4th Cir. 2005) (recognizing equitable tolling allows exceptions to the strict enforcement of deadlines, but rejecting argument that it should be applied to excuse untimely ERISA appeal when the claimant fit none of the established justifications for equitable tolling). For her theory of reinstatement, McCravy relies upon *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 385 (4th Cir. 2001) (holding that "reinstatement, as a general equitable concept, is within the range of redress permitted," and remanding for inquiry into whether reinstatement of the parties to the pre-election status quo was appropriate).

Based on these cases, McCravy asks us to allow her to overcome any technical deficiency to converting her coverage. *Cf. Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574,

---

[4]We have some hesitation to reach this issue as we cannot discern that the district court ever ruled on McCravy's other claims for equitable relief under 29 U.S.C. § 1132(a)(3). In her motion for summary judgment, McCravy erroneously stated that the district court held that she was "not entitled to the remedies she seeks under ERISA as set forth in her complaint and limiting Plaintiff only to a recovery of the premiums." The district court's order actually limited McCravy's *damages* "to a refund of the withheld premiums."

592 (7th Cir. 2000) (allowing claimant belatedly to pay COBRA premiums to obtain coverage). Like binding MetLife to pay conversion coverage, a remedy that belatedly allows McCravy to convert her eligible dependent policy to an individual policy would treat the application requirement for conversion coverage—which contains a 31-day window from the date of ineligibility—as waived. We decline McCravy's invitation to use estoppel principles to modify the unambiguous terms of an ERISA plan. *See Coleman*, 969 F.2d at 58.

## IV.

By way of cross-appeal, MetLife argues that the district court erred in granting McCravy's motion for summary judgment. MetLife contends that McCravy presented no facts in support of her claim that MetLife breached a fiduciary duty, and that McCravy's motion was moot because MetLife refunded McCravy's premiums. The district court stated that "[b]oth parties agree that McCravy is entitled to a return of $311.09 in premiums. Based on this stipulation, the court grants McCravy's motion for summary judgment." MetLife concedes on appeal that McCravy is "entitled to a premium refund." Brief of Appellee at 41.

Preliminarily, we address whether MetLife has standing to bring this cross-appeal. In order to have standing, a party must be aggrieved by a district court's judgment. *HCA Health Services v. Metro. Life Ins. Co.*, 957 F.2d 120, 123 (4th Cir. 1992). "An injury in fact is required for a party to be aggrieved for purposes of being able to appeal; the party's desire for better precedent does not by itself confer standing to appeal." *Id.* at 124. A party may be aggrieved by a decision that adversely affects its legal rights or position with regard to other parties in the case or to other potential litigants. *Custer v. Sweeny*, 89 F.3d 1156, 1164 (4th Cir. 1996).

Since the inception of this lawsuit, MetLife has never disputed McCravy's right to a refund of the wrongfully withheld

premiums. The district court's judgment required MetLife to pay the $311.09 in premiums if it had not already done so and nothing more. MetLife was not aggrieved by a judgment requiring it to pay an amount that it always agreed that it owed. MetLife's argument on appeal that McCravy's motion for summary judgment was moot because MetLife already refunded the premiums only supports the conclusion that it was not aggrieved by the district court's order. We therefore hold that MetLife lacks standing to prosecute its cross-appeal. MetLife's cross-appeal is dismissed.

Accordingly, the district court's order is

*AFFIRMED*.